IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSOLIDATED WORK STATION COMPUTING, LLC, | ) 15 CV 680 <br> ) Case No. _____ <br> ) <br> ) |
| Plaintiff, | ) **COMPLAINT FOR PATENT** <br> ) **INFRINGEMENT** |
| v. | ) <br> ) |
| HUAWEI TECHNOLOGIES USA, INC., and HUAWEI DEVICE USA INC., | ) **DEMAND FOR JURY TRIAL** <br> ) <br> ) |
| Defendants. | ) JUDGE DANIELS <br> ) <br> ) |

RECEIVED JAN 30 2015 U.S.D.C. S.D.N.Y.

## PLAINTIFF CONSOLIDATED WORK STATION COMPUTING, LLC'S COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

Plaintiff Consolidated Work Station Computing, LLC ("CWSC" or "Plaintiff") by and for its Complaint against defendants Huawei Technologies USA Inc. and Huawei Device USA Inc., (collectively "Huawei" or "Defendants") hereby alleges as follows:

### NATURE OF THE CASE

1. This is an action for patent infringement arising under the patent laws of the United States. CWSC holds the rights in U.S. Patent No. 6,823,475 ("the '475 patent"). The United States patent laws grant the holder of a patent the right to exclude infringers from making, using, selling or importing the invention claimed in a patent, and to recover damages for the infringer's violations of these rights, and to recover treble damages where the infringer willingly infringed the patent. Under 35 U.S.C. § 282(a), the '475 Patent is entitled to a presumption of validity. CWSC is suing Defendants for infringing its patent, and doing so

willfully. CWSC seeks to recover damages from Defendants, including treble damages for willful infringement.

## THE PARTIES

2. CWSC is a limited liability company, organized and existing under the laws of the State of Texas, having a place of business at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3. Defendant Huawei Technologies USA Inc., is a corporation organized and existing under the laws of the State of Texas, with an office and principal place of business located at 2200 Rose Ave, Suite 2200, Dallas, Texas 85201.

4. Defendant Huawei Device USA Inc., is a corporation organized and existing under the laws of the State of Texas, with a place of business at 5700 Tennyson Parkway, Suite 600, Plano, Texas 75024.

## JURISDICTION

5. This is an action for patent infringement arising under the patent laws of the United States of America, more specifically under 35 U.S.C. § 100, *et seq.* Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1338.

6. Personal jurisdiction is also proper in this Court and this judicial district under N.Y. Civ. Pract. L. R. § 302 because, upon information and belief, Defendants, among other things, conduct business in, and avail themselves of the laws of, the State of New York. In addition, upon information and belief, Defendants through their own acts and/or through the acts of their affiliated companies (acting as its agents or alter egos) make, use, offer to sell, sell (directly or through intermediaries), import, license and/or supply, in this District and elsewhere in the United States, products, through regular distribution channels, knowing such products would be used, offered for sale and/or sold in this District. Plaintiff's cause of action arises

directly from Huawei's business contacts and other activities in the State of New York and in this District.

7. Upon information and belief, Defendants directly or through their subsidiaries or intermediaries, make, use, offer for sale, sell, import, advertise, make available and/or market and, at all relevant times have made, used, offered for sale, sold, imported, advertised and made available and/or marketed products within the Southern District of New York, through their website: http://huawei.com/en/products/servers/e-servers/e9000/index.htm within this District, thereby infringing the '475 patent.

## VENUE

8. Venue properly lies within this judicial district and division, pursuant to 28 U.S.C. §§ 1391(b), (c), and (d), and 1400(b).

9. Upon information and belief, Defendants reside in this District for the purposes of venue, insofar as they are subject to the personal jurisdiction in this District, have committed acts of infringement in this District, solicit business in this District, and conduct other business in this District.

## INFRINGEMENT OF U.S. PATENT NO. 6,823,475

10. CWSC incorporates by reference the allegations set forth in the preceding paragraphs.

11. On November 23, 2004, the '475 patent, entitled "PC-CPU Motherboards With Common Fault-Tolerant Power Supply," was duly and lawfully issued based upon an application filed by the inventor, Robin Harker. A true and correct copy of the '475 Patent is attached hereto as Exhibit 1.

12. CWSC is the assignee and the owner of all right, title and interest in and to the '475 patent, and has the right to sue and recover damages for infringement thereof.

13. Upon information and belief, Defendants directly or through intermediaries have been and continue to be engaged in making, having made, using, importing, supplying, distributing, selling and/or offering for sale infringing products and/or systems, including, but not limited to, Huawei E Series Blade Servers, e.g., Huawei E9000 Server ("Accused Products") in the United States generally, and in the Southern District of New York specifically.

14. Upon information and belief, by acts including, but not limited to making, having made, using, importing, supplying, distributing, selling, offering for sale and/or marketing of products falling within the scope of at least one claim of the '475 patent, Defendants have directly and/or indirectly (by inducement and/or contributory infringement) infringed literally and/or upon information and belief, equivalently, and are continuing to infringe the '475 patent and are thus liable to CWSC pursuant to 35 U.S.C. § 271.

15. Defendants have indirectly infringed and continue to infringe at least one claim of the '475 patent by inducement under 35 U.S.C. 271(b). Defendants have induced and continue to induce users of the accused products to directly infringe at least one claim of the '475 patent. In addition, Defendants knew of their infringement of the '475 patent since at least December 22, 2011, when CWSC commenced an action against Defendants for infringement of the '475 Patent in the Eastern District of Texas (Civil Action No. 6:11-cv-696).

16. Upon information and belief, Defendants knowingly induced customers to use their Accused Products, including, for example, by promoting the Accused Products online, including, without limitation, through the website: http://huawei.com/en/products/servers/e-

COMPLAINT FOR PATENT INFRINGEMENT

servers/e9000/index.htm, and/or by providing customers with instructions and/or manuals for using the Accused Products.

17. Defendants' past and continued indirect infringement by inducement is without good-faith belief of non-infringement or invalidity.

18. Defendants' infringement of the '475 patent is without consent of, authority of, or license from CWSC.

19. Upon information and belief, Defendants' infringement of the '475 patent has been and is willful. Huawei has been on notice of the '475 Patent since at least December 22, 2011, when CWSC commenced an action against Huawei for infringement of the '475 Patent in the Eastern District of Texas (Civil Action No. 6:11-cv-696). That action resulted in the execution, on November 12, 2012, of a Termination Agreement between CWSC and Huawei, wherein Huawei represented that neither Huawei nor its affiliates "have disposed of any blade server products (including for example, blade server chassis, blade server enclosures, blades, or blade server power supplies) in the United States, except two sets of Tecal T8000 and approximately two million dollars of blade server system subcomponents." Huawei made this representation in consideration of CWSC dismissal of the complaint, which was made *without prejudice*. Since that time, however, Huawei has chosen to introduce new blade server products, including the Accused Products, into the United States market, leading to the filing of this action. This action, therefore, is "exceptional" within the meaning of 35 U.S.C. § 285 entitling CWSC to its attorneys' fees and expenses.

20. As a result of Defendants' acts of infringement, CWSC has suffered and will continue to suffer damages in an amount to be proven at trial.

COMPLAINT FOR PATENT INFRINGEMENT

## PRAYER FOR RELIEF

WHEREFORE, CWSC requests this Court enter judgment as follows:

A. That the '475 patent is valid and enforceable;

B. That Defendants have directly and indirectly infringed at least one claim of the '475 patent;

C. That such infringement has been willful;

D. That Defendants account for and pay to CWSC all damages pursuant to 35 U.S.C. § 284 to adequately compensate CWSC for Defendants' infringement of the '475 patent, but in no event less than a reasonable royalty for the use made by Defendants of the invention set forth in the '475 patent;

E. That CWSC receives enhanced damages, in the form of treble damages, pursuant to 35 U.S.C. § 284;

F. That this is an exceptional case under 35 U.S.C. § 285;

G. That Defendants pay CWSC all of CWSC's reasonable attorneys' fees and expenses pursuant to 35 U.S.C. § 285;

H. That CWSC be granted pre-judgment and post-judgment interest in accordance with 35 U.S.C. § 284 on the damages caused to it by reason of Defendants' infringement of the '475 patent, including pre-judgment and post-judgment interest on any enhanced damages or attorneys' fees award;

I. That costs be awarded in accordance with 35 U.S.C. § 284 to CWSC; and

J. That CWSC be granted such other and further relief as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

CWSC hereby demands a trial by jury on all issues so triable in this action.

Dated: January 30, 2015

                                                       KROUB, SILBERSHER & KOLMYKOV PLLC

By: *[signature]*
Sergey Kolmykov (SK7790)
skolmykov@kskiplaw.com
Gaston Kroub (GK6970)
gkroub@kskiplaw.com
Zachary Silbersher (ZS4391)
zsilbersher@kskiplaw.com

305 Broadway, 7th Floor
New York, NY 10007
Telephone No.: (212) 323-7442

ATTORNEYS FOR PLAINTIFF CONSOLIDATED WORK STATION COMPUTING, LLC.

# EXHIBIT 1

US006823475B1

## (12) United States Patent
### Harker

(10) Patent No.: **US 6,823,475 B1**
(45) Date of Patent: **Nov. 23, 2004**

(54) **PC-CPU MOTHERBOARDS WITH COMMON FAULT-TOLERANT POWER SUPPLY**

(76) Inventor: **Robin Harker**, 30 Hollybush Lane, Amersham, Buckinghamshire HP6 6EB (GB)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 409 days.

(21) Appl. No.: **09/711,983**

(22) Filed: **Nov. 14, 2000**

(30) **Foreign Application Priority Data**

Nov. 15, 1999  (GB) .............................................. 9926858

(51) Int. Cl.[7] .............................. **G06F 11/16**; G06F 1/26
(52) **U.S. Cl.** .............................. **714/14**; 714/22; 714/11
(58) Field of Search ............................. 714/14, 22, 11; 713/300, 340

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,450,285 A | * | 9/1995 | Schlemmer | 361/683 |
| 5,577,205 A | * | 11/1996 | Hwang et al. | 361/683 |
| 5,598,041 A | * | 1/1997 | Willis | 307/43 |
| 5,659,789 A | | 8/1997 | Hausauer et al. | 713/322 |
| 5,664,089 A | * | 9/1997 | Byers et al. | 714/14 |
| 5,745,670 A | * | 4/1998 | Linde | 714/22 |
| 5,784,641 A | | 7/1998 | Sueyoshi et al. | 710/2 |
| 5,848,230 A | * | 12/1998 | Walker | 714/7 |
| 5,909,583 A | * | 6/1999 | Hayes et al. | 713/300 |
| 6,181,549 B1 | * | 1/2001 | Mills et al. | 361/683 |
| 6,189,107 B1 | * | 2/2001 | Kim et al. | 713/300 |
| 6,191,499 B1 | * | 2/2001 | Severson et al. | 307/31 |
| 6,195,754 B1 | * | 2/2001 | Jardine et al. | 713/324 |
| 6,201,319 B1 | * | 3/2001 | Simonelli et al. | 307/26 |
| 6,263,452 B1 | * | 7/2001 | Jewett et al. | 714/9 |
| 6,289,467 B1 | * | 9/2001 | Lewis et al. | 713/340 |
| 6,295,571 B1 | * | 9/2001 | Scardamalia et al. | 710/308 |
| 6,345,369 B1 | * | 2/2002 | Kitamorn et al. | 714/14 |
| 6,392,872 B1 | * | 5/2002 | Doustou et al. | 361/681 |
| 6,449,729 B1 | * | 9/2002 | Sanders et al. | 714/4 |
| 6,542,997 B1 | * | 4/2003 | Rolls et al. | 713/324 |
| 6,597,073 B1 | * | 7/2003 | Check | 307/64 |

FOREIGN PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| GB | 2295057 A | | 5/1996 | H02J/3/38 |

* cited by examiner

*Primary Examiner*—Scott Baderman
*Assistant Examiner*—Anne L. Damiano
(74) *Attorney, Agent, or Firm*—Davis & Bujold, P.L.L.C.

(57) **ABSTRACT**

Processor modules (2) are supported side-by-side with one another to slide in and out of a cabinet (1) on tracks (6, 7), each module (2) including a PC-CPU motherboard (11) and a hard-disk unit (16) mounted on a metal plate (3). Power is supplied to all the modules (2) in parallel from two power-supply units (18) mounted in the back of the cabinet (1), each comprising a pair of power-supply modules (19). The pairs of power-supply modules (19) supply power in parallel with one another to the processor modules (2). Diode circuitry (20) is included in each power-supply module (19) to isolate that power-supply module (19) from its paired power-supply module (19) in the event that a fault occurs by which the output voltage of the respective power-supply module (19) fall below that of the power-supply module (19) with which it is paired.

**8 Claims, 4 Drawing Sheets**





Fig. 1



Fig.2



Fig.3



Fig.4

US 6,823,475 B1

| 1 | 2 |

# PC-CPU MOTHERBOARDS WITH COMMON FAULT-TOLERANT POWER SUPPLY

This invention relates to computer systems, and is concerned especially with computer systems of the kind that involve the interconnection or clustering of a multiplicity of processors.

## BACKGROUND OF THE INVENTION

It is known to form a computing system of the above-specified kind by interconnecting the processing units of a multiplicity of personal computers (PCs) and operating them in parallel with one another; such systems are sometimes referred to as 'Beowulf clusters'. The central processing units (CPUs) of PCs provide significant computing power at relatively-low cost, and advantage has been taken of this to form systems of the above-specified kind having very high computing power comparable with that of a specially-designated supercomputer, at a fraction of the supercomputer-cost. In such systems a multiplicity of PC-CPUs are interconnected and operated in parallel with one another as separate nodes of a local area network. These systems using clustered CPUs require the development of special software to enable parallel operation, and are generally slower than their supercomputer counterparts, but have significant advantage economically.

The CPUs of PCs are not designed to have the extended reliability to be expected of a supercomputer, so computing systems of the known form involving clustered CPUs are, in comparison, susceptible to faults. A fault occurring in an individual CPU will disrupt processing of the current application, and although the application can in general be re-started without replacement of the faulty unit, the disruption and loss of computing time involved is undesirable.

It is one of the objects of the present invention to provided a computer system of the said above-specified kind, which whilst having the potential for cost advantage of the known clustered PC-CPU systems, in less susceptible to fault disruption.

## SUMMARY OF THE INVENTION

According to one aspect of the present invention there is provided a computer system of the said above-specified kind wherein power supply to each processor is from a common power-supply means having fault-tolerating redundancy.

The computer system of the present invention may, especially for cost-advantage, utilize processors that are of a form such as used in the context of PC computers. However in accordance with the present invention, rather than powering each processor from its own power-supply unit as in the case of the known form of computer system referred to above utilising PC-CPUs, they are powered from common power-supply means. The power-supply units of PC-CPUs especially, are not designed to have long fault-free operation so the likelihood of a fault arising in any of a multiplicity of clustered PC-CPUs, can be significantly high. The individual power-supply units might be replaced by units with a higher standard of reliability, but it is generally more economical to provide a common power-supply means and invest this with an even higher standard of reliability and, moreover, to include fault-toleration redundancy within it.

The processors of the computer system according to the invention may be carried by individual printed-circuit boards, for example PC motherboards, that are mounted together side-by-side within a rack-mounting. The rack-mounting may be contained within a cabinet together with the power-supply means.

The power-supply means may involve one or more power-supply units each of which comprises a plurality of power-supply modules which operate in parallel with one another in supplying power to the processors. The modules may each include diode or other circuitry that is responsive to the occurrence of a fault within the module (eg reduction in its voltage output in relation to that of the other module) to isolate that module effectively from the processors. Where more than one power-supply unit is involved, they may act in parallel with one another to power all the processors together.

## BRIEF DESCRIPTION OF THE DRAWINGS

A computer system in accordance with the present invention will now be described, by way of example, with reference to the accompanying drawings, in which:

FIG. **1** is a front elevation of the computer system according to the invention, with the front panel of the cabinet housing the system removed;

FIG. **2** is a sectional plan of the computer system of FIG. **1** showing only two of its five processing modules with one fully inserted and the other only partially inserted;

FIG. **3** is a sectional side elevation of the computer system of FIG. **1**; and

FIG. **4** is a schematic representation of the power distribution circuitry of the computer system of FIG. **1**.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

Referring to FIGS. **1** to **3**, the computer system of the invention is housed within a standard computer cabinet **1** which contains racking (not shown in detail) for supporting five processor modules **2** side-by-side within the cabinet **1**. Each processor module **2** includes an L-shape plate **3** (see FIG. **3**) by which it is supported in the cabinet **1**, the plate **3** being held upright by engagement of its top and bottom edges **4** and **5** within grooved tracks **6** and **7**, respectively, of the racking, so that the module **2** can be readily slid in and out of the cabinet **1** on the tracks **6** and **7**. Handles **8** are provided at the front of each module **2** to assist with insertion and withdrawal, and power connection to the module **2** is established when the module **2** is fully inserted, via a two-part plug-and-socket connector **9** (shown as a single block) at the rear of the projecting base-part **10** of the L-shape plate **3**.

Each plate **3** carries a PC-CPU motherboard **11** that is mounted in spaced face-to-face relationship with it immediately behind a front-panel **12** of the module **2**. This enables data connections to be readily made with its processor **13** and a plug-in network card **14** (see FIG. **3**) and other circuitry (not shown) of the motherboard **11**, via connectors **15** on the front-panel **12**. The motherboard **11** is interconnected by wiring (not shown) for data interchange with a hard-disk unit **16** mounted on the projecting base-part **10** of the plate **3**, and is powered along with the unit **16** by connections (not shown) from the connector **9**.

Referring also now to FIG. **4**, power is supplied to all five processor modules **2** in parallel via a wiring loom **17** which interconnects their connectors **9** with two power-supply units **18**. The units **18**, which are mounted at the back of the cabinet **1** to lie above the base-parts **10** of the five plates **3**, each comprise two, redundant power-supply modules **19**. The two modules **19** supply power in parallel with one another, and each includes diode circuitry **20** (indicated in FIG. **4** in the case of one module **19** only). The circuitry **20**

3

is operative to isolate the respective module 19 from its paired module 19 and the loom 17 generally, in the event that a fault occurs by which the voltage output of the module 19 falls so that current would otherwise flow to it rather than from it.

The two units 18 operate in parallel with one another in supplying power to the five processor modules 2, so that the operation in parallel of the four power-supply modules 19 is with a significant degree of redundancy for power-supply fault-survival.

The five processor modules 2 are interconnected via the connectors 15 and network cards 14 by data-cabling (not shown) to operate in parallel with one another as individual nodes of a local-area network and provide a high-powered computing capability. The PC motherboards 11 used, have a high degree of reliability, and that same degree of reliability is afforded to the computer system as a whole by the use of the highly-reliable form of powering adopted.

Although in the above example the modules 2 are operated in parallel, this need not be the case where, for example, a high processor density is required. A high processor density is required for example by internet service providers, when establishing a large number of web servers.

What is claimed is:

1. A computer system comprising:

a multiplicity of PC-CPU motherboards, each of the multiplicity of PC-CPU motherboards includes a CPU processor having electrical circuitry interconnected with the processor, and a power-input connector connected to the circuitry for use in the supply of electrical power to power the respective motherboard;

an electrical power-supply means for affording fault-tolerating redundancy for supplying electrical power;

a mounting means for mounting the motherboards together with the power-supply means as a single unit; and

a wiring means for connecting the power-supply means n common to the power-input connectors of the motherboards for powering the motherboards in parallel with one another;

and wherein the power-supply means comprises a plurality of pairs of power-supply modules, means coupling the two power-supply modules of each said pair together for supplying power in parallel with one another and wherein the wiring means couples the pairs of power-supply modules together in parallel with one another for supplying power to the motherboards in parallel.

2. The computer system according to claim 1 wherein each power-supply module includes fault-responsive circuitry for responding to the occurrence of a fault within that respective power-supply module to isolate that individual power-supply module from powering the motherboards.

3. The computer system according to claim 2 wherein the fault-responsive circuitry of each individual power-supply module is responsive to reduction in voltage output of the respective power-supply module to isolate that individual power-supply module from supplying power to the motherboards.

4

4. A computer system comprising:

a multiplicity of processor modules each of the multiplicity of processor modules comprises a PC-CPU motherboard and a power-input connector, the PC-CPU motherboard including a CPU processor and electrical circuitry interconnected with the processor, and the power-input connector being interconnected with the PC-CPU motherboard for use in the supply of electrical power to power the PC-CPU motherboard;

a cabinet housing the processor modules, the cabinet including means mounting the processor modules side-by-side with one another within the cabinet;

an electrical power-supply means mounted within the cabinet, the power-supply means affording fault-tolerating redundancy in its supply of electrical power; and

a wiring means within the cabinet for connecting the power-supply means to the power-input connectors of all the processor modules in common for powering the motherboards in parallel with one another;

wherein the power-supply means comprises a plurality of power-supply modules, and means coupling the power-supply modules in parallel with one another for supplying power to the processor modules in parallel, and wherein the power-supply means comprises a plurality of pairs of power-supply modules, and means coupling the two power-supply modules of each said pair together for supplying power in parallel with one another, and wherein the wiring means couples the pairs of power-supply modules in parallel with one another for supplying power to the processor modules in parallel.

5. The computer system according to claim 4 wherein the means mounting the processor modules within the cabinet comprises a multiplicity of tracks for receiving the processor modules individually, the processor modules being mounted on respective ones of the tracks for sliding movement selectively in and out of the cabinet.

6. The computer system according to claim 4 wherein each processor module includes a hard-disk unit, and the hard-disk unit is interconnected with the PC-CPU motherboard of the respective processor module for data interchange therewith.

7. The computer system according to claim 4 wherein each power-supply module includes fault-responsive circuitry for responding to the occurrence of a fault within that respective power-supply module to isolate that individual power-supply module from supplying power to the processor modules.

8. The computer system according to claim 7 wherein the fault-responsive circuitry of each power-supply module is responsive to reduction in voltage output of the respective power-supply module to isolate that individual power-supply module from supplying power to the processors.

* * * * *